UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

In re: Mirapex Products Liability Litigation

MDL No. 07-1836 (MJD/FLN)

Kathryn Gillette et al.,

Plaintiffs,

v.

Boehringer Ingelheim Pharmaceuticals, Inc. et al.,

Defendants.

Civil No. 15-cv-3005 (MJD/FLN)

**ORDER AND REPORT AND RECOMMENDATION**

Kathryn Gillette and Raif Szczepanski, *pro se*, for Plaintiffs.
Scott Smith for Defendant Boehringer Ingelheim Pharmaceuticals, Inc.
Lori Leskin for Defendants Pfizer, Inc., Pharmacia Corp., and Pharmacia & Upjohn Co., LLC.

**THIS MATTER** came before the undersigned United States Magistrate Judge on the following motions: Defendant Boehringer Ingelheim Pharmaceuticals, Inc.'s ("BIPI") motion for summary judgment (ECF No. 56); Defendants Pfizer, Inc., Pharmacia Corp., and Pharmacia & Upjohn Co.'s (collectively, "Pfizer") motion for summary judgment (ECF No. 63); and Defendants' joint motion to strike Plaintiffs' sur-reply brief and exhibits (ECF No. 82).[1] The motions for summary judgment were referred to the undersigned for Report and Recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1. Order, ECF No. 68. For the reasons set forth below, the Court recommends that both motions for summary judgment be **GRANTED**. Defendants' joint motion to

[1] This action is a member of the multidistrict litigation *In Re: Mirapex Products Liability Litigation*, Case No. 07-md-1836 (MJD/FLN). Defendants' motions and supporting memoranda in the present action were also filed in the Mirapex MDL. *See* BIPI's Mot. for Summ. J., ECF No. 1960; Pfizer's Mot. for Summ. J., ECF No. 1968; Defs.' Mot. to Strike, ECF No. 1977.

strike Plaintiffs' sur-reply brief is **DENIED**.

## I. FINDINGS OF FACT

### A. Background

At all times relevant to the allegations in the Amended Complaint, Plaintiffs Kathryn Gillette and Raif Szczepanski were residents of Indianapolis, Indiana. Am. Compl. ¶ 1, ECF No. 42. Szczepanski is Gillette's spouse. *Id.*

#### 1. Gillette's history of taking Mirapex

On June 15, 2001, Gillette presented to Leo T. d'Ambrosio, M.D., with symptoms of restless leg syndrome ("RLS"). Pls.' Ex. A, at 7, ECF No. 79-1. Gillette was prescribed the drug Mirapex at a dosage of 0.125 mg, two times per day. *Id.* By September 26, 2003, Gillette was taking Mirapex "three times per day without problems." *Id.* at 10.

Gillette had an appointment with Danica Vasilchek, M.D., on June 11, 2008, complaining of symptoms related to her RLS. Scott Aff. Ex. A, at 1–3, ECF No. 60. Dr. Vasilchek increased Gillette's dosage of Mirapex to one to three 0.5 mg tablets per day. *Id.* at 2. Gillette subsequently visited Dr. Vasilchek on April 16, 2010 for continued symptoms of RLS. ECF No. 60, Ex. B., at 1. Dr. Vasilchek again increased Gillette's dosage and instructed Gillette to take two to three 0.75 mg tablets (i.e., a daily dose of 1.5–2.25 mg) of Mirapex a few hours prior to her bedtime. *Id.* at 2.

Gillette's pharmacy records show that her April 16, 2010 prescription was filled with 1.5 mg tablets of Mirapex's generic equivalent—pramipexole dihydrochloride—not brand-name Mirapex. ECF No. 60, Ex. C, at 2. These tablets had a National Drug Code ("NDC") of 00555061514.[2] *Id.*

---

[2] According to James Segretario, BIPI's Director of Regulatory Affairs, every prescription drug product approved by the FDA for distribution in the United States, whether brand-name or generic, contains a unique identification number, known as

According to FDA records, medications with this NDC were produced by Barr Laboratories, Inc., not BIPI or Pfizer. Sergretario Decl. ¶ 4, ECF No. 59. Gillette was provided with Barr Laboratories' pramipexole dihydrochloride on four other occasions—June 9, 2010, October 27, 2010, February 14, 2011, and March 29, 2011. ECF No. 60, Ex. C, at 18.

Beginning in November 2011, Gillette's pharmacy began filling her Mirapex prescription with 0.75 mg tablets of pramipexole dihydrochloride manufactured by Teva Pharmaceuticals USA, Inc. (NDC #00093801998). *Id.* Gillette was provided with Teva Pharmaceuticals' tablets on at least ten separate occasions between November 4, 2011 and September 1, 2012. *Id.* Between October 2012 and November 2013, Gillette's pharmacy filled her Mirapex prescription with 0.75 mg tablets of pramipexole dihydrochloride manufactured by Torrent Pharmaceuticals Ltd. (NDC #13668018490). *Id.* Gillette was dispensed Torrent Pharmaceuticals' tablets on at least four occasions during this time frame. *Id.*, Ex. C, at 6, 18. Finally, beginning in November 2013, Gillette's pharmacy filled her Mirapex prescription with 0.5 mg tablets of pramipexole dihydrochloride (NDC #68462033290) manufactured by Glenmark Generics Inc. USA. *Id.*, Ex. C, at 18. Gillette was provided with Glenmark Generics' tablets on at least fifteen occasions, from December 23, 2013 until she stopped taking the drug in late 2015. *Id.*, Ex. C, at 18–19. The Court observes that there are no records of Gillette's pharmacy giving Gillette any tablets of Mirapex manufactured by BIPI and/or Pfizer after April 16, 2010.

**2. Gillette's history of compulsive gambling**

According to Plaintiffs' Amended Complaint, shortly after Gillette's daily dose of Mirapex

---

the NDC. ECF No. 59 ¶ 2. One may use the NDC to look up the manufacturer of a prescription drug through the FDA's website. *Id.* (citing http://www.fda.gov/drugs/InformationOnDrugs/ucm142438.htm).

was increased to 1.5–2.25 mg in 2010, Gillette began to gamble compulsively in casinos. ECF No. 42 ¶ 21. Plaintiffs state that "[o]ver the next three years, [Gillette] developed pathological gambling habits, which consumed her thoughts, actions and had a detrimental effect on her relations with her family, including her spouse." *Id.* ¶ 22. According to Plaintiffs, "[f]rom 2010 through July 2013, Plaintiff Gillette's pathological gambling resulted in significant financial losses for her and her spouse." *Id.* ¶ 23. This time frame was confirmed by Gillette in a "Fact Sheet" she completed under oath, wherein she stated, "In April 2010, my dosage of Mirapex increased and within a week of that increase my behavior started to change and I began to gamble compulsively." Smith Aff. Ex. A, at 3, ECF No. 85. Gillette alleges that such gambling caused her to suffer severe physical and economical damages.

Despite Gillette's numerous statements that her compulsive gambling did not start until after April 2010, she now alleges in her sur-reply memorandum,[3] for the first time, that her fascination with gambling in fact began in 2001, soon after she was originally prescribed Mirapex for her RLS. *See* Pls.' Sur-Reply Mem., ECF No. 74. For example, Gillette claims that she felt a deep desire to gamble while watching individuals play blackjack in a cruise-ship-casino in May 2004. *Id.* at 4. Acting on her desire to gamble, Gillette traveled to Europe in order to enter a casino in Monte Carlo. *Id.* Then, in 2007, Gillette purchased a deck of cards at Niagara Falls in order to play blackjack. *Id.* According to Gillette, her urges to gamble worsened after her dosage increase in April 2010.

---

[3] Defendants have filed a joint motion to strike this memorandum as it was filed in violation of LR 7.1 and in contravention of the Court's Scheduling Order. Mot. to Strike, ECF No. 82. While the Court acknowledges that Plaintiffs' sur-reply is procedurally improper, the Court nevertheless declines to strike the memorandum and its accompanying exhibits because they do not materially impact the Court's decision. Defendants' joint motion to strike is denied.

**B. Procedural history**

Plaintiffs, appearing *pro se*, filed their original Complaint on June 11, 2015 in the U.S. District Court for the Southern District of Indiana. *See* Compl., ECF No. 1. On July 8, 2015, the U.S. Judicial Panel on Multidistrict Litigation ("JPML") entered a conditional transfer order, transferring this action to the District of Minnesota as part of the multidistrict litigation ("MDL") *In re Mirapex Product Liability Litigation*, MDL No. 07-1836.

On July 31, 2015, Defendants filed a joint motion to dismiss Plaintiffs' Complaint. Mot. to Dismiss, ECF No. 19. Given the nature of Plaintiffs' claims, the undersigned referred Plaintiffs to the Federal Bar Association's *Pro Se* Project. Ltr., ECF No. 28. Pursuant to this referral, Plaintiffs retained the services of two volunteer attorneys, who agreed to assist Plaintiffs by filing an Amended Complaint and representing them in an early settlement conference with the Court. Plaintiffs' Amended Complaint alleges seven causes of action: (1) strict liability (design, manufacturing, and warning defects), (2) breach of express warranty, (3) breach of implied warranty, (4) negligence, (5) negligence per se, (6) negligent misrepresentation, and (7) loss of consortium. Am. Compl. ¶¶ 24–60, ECF No. 42. Due to the filing of Plaintiffs' Amended Complaint, Defendants withdrew their joint motion to dismiss.

An early settlement conference with the undersigned was held on January 12, 2016. The parties, however, did not resolve the issues in this lawsuit. Following the settlement conference, the two volunteer attorneys representing Plaintiffs through the *Pro Se* Project withdrew, as the scope of their limited representation was complete. Mot. to Withdraw, ECF No. 48; Order, ECF No. 51.

During a teleconference with the Court on February 16, 2016, the parties agreed that Defendants should be allowed to move for summary judgment before adopting a discovery schedule.

Sch. Order, ECF No. 55. Pursuant to that agreement, the Court issued a Scheduling Order, outlining the following briefing schedule: Defendants' motions for summary judgment were due by March 1, 2016, Plaintiffs' opposition memorandum was due by April 1, 2016, and Defendants' reply memoranda were due by April 15, 2016. *Id.*

Through their respective motions, Defendants argue that the prescription medication that allegedly caused Gillette's injuries was not manufactured by either BIPI or Pfizer, and therefore Defendants are not liable to Plaintiffs under Indiana law. Plaintiffs filed their opposition memorandum on March 28, 2016, and Defendants subsequently filed their reply memoranda on April 15, 2015. Opp'n Mem., ECF No. 77; BIPI's Reply, ECF No. 70; Pfizer's Reply, ECF No. 72. After briefing on Defendants' motions had closed, Plaintiffs filed an unauthorized sur-reply memorandum on April 25, 2016. ECF No. 74. In response, Defendants filed a joint motion to strike Plaintiffs' memorandum. Mot. to Strike, ECF No. 82. Plaintiffs oppose Defendants' motion.

## II. STANDARD OF REVIEW

Summary judgment is proper if the evidence, viewed in the light most favorable to the nonmoving party, demonstrates that there are no genuine disputes of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Anderson v. Larson*, 327 F.3d 762, 767 (8th Cir. 2003). A disputed fact is material only if it might affect the outcome of the case under the governing substantive law, and a dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A party opposing a motion for summary judgment "may not rest upon the mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." *Khoury v. Grp. Health Plan, Inc.*, 615 F.3d 946, 952 (8th Cir. 2010).

## III. CONCLUSIONS OF LAW

### A. Plaintiffs' claims for strict liability, negligence, negligence per se, and negligent misrepresentation

#### 1. The state law claims are preempted by the Indiana Products Liability Act

Plaintiffs' Amended Complaint asserts numerous state law causes of action, including: (1) strict liability (design, manufacturing, and warning defects), (2) negligence, (3) negligence per se, and (4) negligent misrepresentation. ECF No. 42 ¶¶ 24–58. When a diversity action is transferred as part of an MDL, the MDL Court must apply the law of the transferor forum. *See In re Vioxx Prods. Liab. Litig.*, 478 F. Supp. 2d 897, 903 (E.D. La. 2007); *see also In re Guidant Corp. Implantable Defibrillators Prods. Liab. Litig.*, 489 F. Supp. 2d 932, 934–936 (D. Minn. 2007) (stating that when a diversity action is transferred as part of an MDL, the transferor court's choice-of-law rules continue to apply even if the complaint is later amended in the transferee court). Plaintiffs, who are Indiana residents, filed their original Complaint in the U.S. District Court for the Southern District of Indiana. *See* Compl., ECF No. 1. The action was thereafter transferred by the JPML as part of the Mirapex MDL. The Court therefore applies Indiana law to the present action.

Defendants argue that Plaintiffs' claims are subject to, and governed by, the Indiana Products Liability Act ("IPLA"), Ind. Code § 34-20-1-1 *et seq*. ECF No. 58 at 5. Plaintiffs did not object to the application of the IPLA to their claims.

The first section of the IPLA states:

This article governs all actions that are:

(1) brought by a user or consumer;

(2) against a manufacturer or seller; and

(3) for physical harm caused by a product;

> regardless of the substantive legal theory or theories upon which the action is brought.

Ind. Code § 34-20-1-1. The statute defines "consumer" as "any individual who uses or consumes the product." Ind. Code § 34-6-2-29. A "manufacturer" is defined as "a person or entity who designs, assembles, fabricates, produces, constructs, or otherwise prepares a product or a component part of a product before the sale of the product to a user or consumer." *Id.* § 34-6-2-77. According to the Indiana Supreme Court, the legislature "clearly intended that the [IPLA] govern all product liability actions, whether the theory of liability is negligence or strict liability in tort." *Stegemoller v. ACandS, Inc.*, 767 N.E.2d 974, 975 (Ind. 2002). Courts have also held that the IPLA governs breach of warranty claims that are based in tort. *Hathaway v. Cintas Corp. Servs., Inc.*, 903 F. Supp. 2d 669, 672–73 (N.D. Ind. 2012).

Here, Plaintiffs contend that Gillette, a consumer, purchased and used the product Mirapex, a prescription drug that is jointly manufactured by Defendants. *See* ECF No. 42 ¶ 9. Given the IPLA's express language, as well as the holdings of various courts in Indiana, it is clear to the Court that Plaintiffs' common law claims for strict liability, negligence, negligence per se, and negligent misrepresentation are all preempted by the IPLA. The Court therefore construes these claims as one single cause of action under the IPLA. *See Ryan ex rel. Estate of Ryan v. Philip Morris USA, Inc.*, No. 1:05-cv-162, 2006 WL 449207 (N.D. Ind. Feb. 22, 2006) (dismissing plaintiff's common law claims for negligence and fraud, but allowing plaintiff's allegations to proceed under the IPLA).

**2. Defendants' product did not proximately cause Plaintiffs' alleged injuries**

The IPLA provides:

> [A] person who sells, leases, or otherwise puts into the stream of commerce any product in a defective condition unreasonably dangerous to any user or consumer or to the user's or consumer's property is subject to liability for physical harm *caused*

*by that product* to the user or consumer or to the user's or consumer's property if:

(1) that user or consumer is in the class of persons that the seller should reasonably foresee as being subject to the harm caused by the defective condition;

(2) the seller is engaged in the business of selling the product; and

(3) the product is expected to and does reach the user or consumer without substantial alteration in the condition in which the product is sold by the person sought to be held liable under this article.

Ind. Code § 34-20-2-1 (emphasis added). The statute makes clear that in order to avoid summary judgment, Plaintiffs must be able to set forth specific facts showing that Defendants' sold, leased, or otherwise put into the stream of commerce the prescription drug that proximately caused Gillette physical harm. *See Thornburg v. Stryker Corp.*, No. 1:05-cv-1378-RLY-TAB, 2006 WL 1843351, at *3–4 (S.D. Ind. June 29, 2006) (holding that the plaintiff did not raise a triable issue of fact that the defendant sold or manufactured the injury-causing product); *Piltch v. Ford Motor Co.*, 11 F. Supp. 3d 884, 888 (N.D. Ind. 2014) (stating that the IPLA requires proof that the defendant's product proximately caused the plaintiff's injuries). Proximate cause requires, at a minimum, causation in fact—that is, that the harm would not have occurred "but for" the defendants' conduct. *Daub v. Daub*, 629 N.E.2d 873, 877 (Ind. Ct. App. 1994). Although proximate cause is generally a question of fact, it becomes a question of law where only a single conclusion can be drawn from the facts. *Florio v. Tilley*, 875 N.E.2d 253, 256 (Ind. Ct. App. 2007).

**a. The relevant time period for causation**

Gillette has not alleged that she suffered any injury until after April 16, 2010. For nine years, while on a dosage of 0.50 mg or lower of Mirapex, Gillette did not exhibit any symptoms of compulsive gambling. Indeed, Plaintiffs state in their Amended Complaint that it was not until after

Gillette's dosage of Mirapex was increased to at least 1.5 mg in 2010 that she began to develop pathological gambling habits. ECF No. 42 ¶¶ 21–22; *see also id.* ¶ 23 ("From 2010 through July 2013, Plaintiff Gillette's pathological gambling resulted in significant financial losses for her and her spouse."). In her "Fact Sheet," Gillette stated, under oath, that she did not begin to gamble compulsively until after her dosage of Mirapex was increased in April 2010. ECF No. 85, Ex. A, at 2, 3. Apart from including a few self-serving statements in her sur-reply memorandum regarding *isolated* instances of gambling between 2001 and 2010, Gillette has put forth no evidence that she suffered from any symptoms of *compulsive* gambling until after the increase in her dosage of Mirapex on April 16, 2010. *See Frevert v. Ford Motor Co.*, 614 F.3d 466, 473–74 (8th Cir. 2010) ("[A] properly supported motion for summary judgment is not defeated by self-serving affidavits. Rather, the plaintiff must substantiate allegations with sufficient probative evidence that would permit a finding in the plaintiff's favor." (internal citations omitted)). She has also provided no expert opinions that her compulsive gambling was caused by any prescription drug taken prior to her April 2010 dosage increase. *See Piltch v. Ford Motor Co.*, 778 F.3d 628, 632 (7th Cir. 2015) (stating that under the IPLA, expert testimony on an issue is required when the issue is not within the understanding of a lay person). The Court therefore concludes that Gillette's injures at issue in this lawsuit could only have been caused by prescription medication that Gillette ingested after April 16, 2010.

**b. Gillette only ingested Mirapex's generic equivalent during the relevant time period**

Plaintiffs have failed to present any specific facts that suggest Gillette's injuries caused by prescription drugs manufactured by Defendants. As discussed above, Gillette's pharmacy records indicate that all of the tablets dispensed to Gillette after April 16, 2010 pursuant to her prescription

for Mirapex were various forms of Mirapex's generic equivalent, pramipexole dihydrochloride, and not brand-name Mirapex. These tablets were manufactured by pharmaceutical companies separate and apart from Defendants. *See* ECF No. 60, Ex. C. In other words, at no time during the relevant time period where Gillette was exhibiting symptoms of compulsive gambling was she ingesting a product manufactured by BIPI or Pfizer. Plaintiffs cannot, therefore, show that Defendants manufactured, sold, or otherwise put into the stream of commerce a product that proximately caused Gillette to gamble compulsively.[4] *See* Ind. Code § 34-20-2-1.

In addition, manufacturers of a brand-name product are generally not liable for injuries caused to users of a generic equivalent (i.e., "innovator liability"). Although the Indiana Supreme Court has not directly addressed this issue, it is clear that the vast majority of courts throughout the country have rejected claims of innovator liability. *See, e.g.*, *Bell v. Pfizer, Inc.*, 716 F.3d 1087 (8th Cir. 2013) (holding that plaintiff could not hold brand-defendants liable for injuries caused from ingesting a generic product); *In re Darvocet, Darvon, and Propoxyphene Prods. Liab. Litig.*, 756 F.3d 917 (6th Cir. 2014) (observing that an overwhelming majority of courts have rejected innovator liability); *Guarino v. Wyeth, LLC*, 719 F.3d 1245, 1252 (11th Cir. 2013) (finding that the "overwhelming national consensus" is that a brand-name manufacturer cannot be liable for injuries caused by the ingestion of the generic form of a product). In the absence of controlling precedent by Indiana's highest court, the Court "must attempt to predict how the highest court would resolve the issue." *Campbell v. Davol, Inc.*, 620 F.3d 887, 894 (8th Cir. 2010). However, "[i]t is not the role

[4] Pfizer is even further removed from the line of causation as it no longer sold Mirapex or maintained any control over the Mirapex New Drug Application after January 1, 2005. Divan Decl. ¶ 3, ECF No. 65. According to Pfizer, it did not manufacture, sell, or place into commerce any brand-name Mirapex after that date. *Id.*

of a federal court to expand state law in ways not foreshadowed by state precedent." *Ashley Cty. v. Pfizer, Inc.*, 552 F.3d 659, 673 (8th Cir. 2009).

The plain language of the IPLA does not support a theory of innovator liability in Indiana. The opening clause of § 34-20-2-1 requires that the defendant must have sold, leased, or otherwise put into the stream of commerce the product that caused the user or consumer's physical harm. Defendants cannot be held liable under the IPLA because they did not sell, lease, or put the generic drug into commerce. In addition, the court in *Stewart v. Sanofi Aventis U.S., LLC*, interpreting Indiana law, rejected a theory of innovator liability and held that the manufacturer of a brand-name drug could not be held liable for injuries sustained from ingesting a generic equivalent. 15 F. Supp. 3d 1151 (N.D. Ala. 2014) (relying on *Short v. Eli Lilly & Co.*, No. 49D 12-0601-CT-2187 (Ind. Super. Ct. Mar. 25, 2009)); *see also In re Darvocet*, 756 F.3d at 945 (predicting that the Indiana Supreme Court would decline to recognize that brand manufacturers owe generic customers a duty of care that could give rise to liability). Based on the overwhelming authority that has declined to recognize a theory of innovator liability, the Court agrees with the *Stewart* and *In re Darvocet* courts that the Indiana Supreme Court would decline to recognize a theory of innovator liability. Plaintiffs cannot hold Defendants liable for generic drugs manufactured by different pharmaceutical companies.

The Court recognizes, however, that its decision leaves Plaintiffs with little recourse for the alleged harms caused by ingesting generic pramipexole dihydrochloride. Indeed, the Supreme Court has held that state tort claims against a generic drug manufacturer for failing to provide adequate warning labels are preempted by federal law. *See PLIVA, Inc. v. Mensing*, 564 U.S. 604, 624–27 (2011) (acknowledging the difficult position federal drug laws place plaintiffs suing generic drug

manufacturers). However, "it is not this Court's task to decide whether the statutory scheme established by Congress is unusual or even bizarre." *Id.* at 625. Summary judgment must be entered in favor of Defendants.

**B. Plaintiffs' breach of warranties claims**

The IPLA governs breach of warranty claims that are based in tort. *Hathaway v. Cintas Corp. Servs., Inc.*, 903 F. Supp. 2d 669, 672–73 (N.D. Ind. 2012). It is unclear by Plaintiffs' Amended Complaint whether their claims for breach of express and implied warranties are based in contract or tort. Plaintiffs, however, do not dispute Defendants' contention that all of their causes of action, including those for breach of express and implied warranties, are governed by the IPLA. Therefore, to the extent Plaintiffs' breach of warranties claims are based in tort, the Court concludes that summary judgment is warranted in favor of Defendants because such claims have been subsumed by the IPLA. *See id.* at 673 (entering summary judgment in favor of defendants on plaintiffs breach of warranties claims based in tort because such claims merged into plaintiffs' IPLA claim).[5]

---

[5] Although not addressed by either party, the Court observes that to the extent Plaintiffs' breach of warranties claims are based in contract, summary judgment must be entered in favor of Defendants because Defendants drug did not proximately cause Gillette's injuries. "Any action based on breach of warranty requires evidence showing not only the existence of the warranty but that the warranty was broken and that the breach of warranty was the proximate cause of the loss sustained." *Frantz v. Cantrell*, 711 N.E.2d 856, 860 (Ind. Ct. App. 1999). As discussed above, at the time Gillette was taking brand-name Mirapex, Gillette did not suffer from any episodes of compulsive gambling. It was not until Gillette began taking generic pramipexole dihydrochloride, manufactured by entities separate from Defendants, did Gillette began to gamble compulsively. There is nothing in the record to suggest that Defendants' brand-name Mirapex proximately caused Gillette's injuries. Summary judgment must be entered in favor of Defendants on Plaintiffs' claims for breach of express and implied warranties.

### C. Plaintiff Szczepanski's claim for loss of consortium

Gillette's husband, Szczepanski, brings a claim for loss of consortium against Defendants. ECF No. 42 ¶¶ 59–60. A loss of consortium claim, however, is derivative in nature because it "derives its viability from the validity of the claim of the injured spouse against the wrongdoer." *Nelson v. Denkins*, 598 N.E.2d 558, 563 (Ind. Ct. App. 1992). "[A] loss of consortium claim cannot be brought when the injured spouse's claim has been adjudicated and lost." *Bender v. Peay*, 433 N.E.2d 788, 792 (Ind. Ct. App. 1982). Because Plaintiffs' product liability claims against Defendants for injuries suffered by Gillette are not actionable, summary judgment must be entered in favor of Defendants on Szczepanski's claim for loss of consortium. *See id.* at 791 ("Since a loss of consortium claim derives its viability from the injured spouse's claim for injuries, we fail totally to understand how a defendant could be liable to one spouse on a loss of consortium claim when it has already been determined [that the defendant] did not cause the other spouse's injuries.").

## IV. ORDER

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendants' joint motion to strike Plaintiffs' sur-reply brief (ECF No. 82 (Case No. 15-cv-3005); ECF No. 1977 (Case No. 07-md-1836)) is **DENIED**.

## V. RECOMMENDATION

Based upon the foregoing, and all of the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

A. BIPI's motion for summary judgment (ECF No. 56 (Case No. 15-cv-3005); ECF No. 1960 (Case No. 07-md-1836)) be **GRANTED**;

B. Pfizer's motion for summary judgment (ECF No. 63 (Case No. 15-cv-3005); ECF No. 1968 (Case No. 07-md-1836)) be **GRANTED**.

DATED: June 16, 2016

*s/Franklin L. Noel*
FRANKLIN L. NOEL
United States Magistrate Judge

Pursuant to the Local Rules, any party may object to this Report and Recommendation by filing with the Clerk of Court and serving on all parties, on or before **July 1, 2016**, written objections that specifically identify the portions of the proposed findings or recommendations to which objection is being made, and a brief in support thereof. A party may respond to the objecting party's brief within fourteen (14) days after service thereof. All briefs filed under the rules shall be limited to 3,500 words. A judge shall make a de novo determination of those portions to which objection is made.

Unless the parties are prepared to stipulate that the District Court is not required by 28 U.S.C. § 636 to review a transcript of the hearing in order to resolve all objections made to this Report and Recommendation, the party making the objections shall timely order and cause to be filed by **July 1, 2016**, a complete transcript of the hearing.

This Report and Recommendation does not constitute an order or judgment of the District Court, and it is, therefore, not appealable to the Circuit Court of Appeals.